ELLIS, Judge.
This is a suit for rescission of the sale of an automobile because of redhibitory defects, and for damages arising therefrom. Plaintiff is Edwin S. Patout, and the defendants are R. S. & S., Inc. and Continental Cars Distributor, Inc., the seller and distributor, respectively, of the automobile. R. S. & S., Inc. reconvened, alleging and offset or counterclaim for use of the automobile by the plaintiff. It was also stipulated that, if there should be judgment in favor of R. S. & S., Inc. on the main demand, that it would be entitled to $108.44 for an unpaid repair bill.
After trial on the merits, judgment was rendered, dismissing plaintiff’s suit as to both defendants, and giving judgment to R. S. & S., Inc. for $108.44. From that judgment, plaintiff has appealed. R. S. & S., Inc. has answered the appeal, asking for interest from date of judicial demand on the $108.44 which it was awarded.
On June 21, 1974, plaintiff purchased an MGB convertible automobile from R. S. & S., Inc. for a total price of $4,985.00. On the day of the purchase, the alternator pulley shattered, denting the hood slightly. The pulley was replaced immediately. On July 10, 1974, the 1,000 mile checkup was performed, and the dent in the hood repaired.
Plaintiff failed to have the 3,000 mile checkup performed, but did bring the car in for the 6,000 mile checkup on August 26, 1974, at which time regular maintenance was performed, and the exhaust pipe was repaired where it had come loose from the manifold. Plaintiff failed to have the 9,000 mile checkup, but did bring the car in for the 12,000 mile checkup on February 7, 1975, at which time regular maintenance was performed. At that time the car had 11,752 miles showing on its odometer.
On or about February 25, 1975, while plaintiff was driving on the highway, the *1163 bearings on the water pump burned out, causing extensive damage to the radiator and fan. R. S. & S., Inc. picked up the car at New Iberia, where plaintiff lived, and towed it back to Baton Rouge, where the damage was repaired, without cost to plaintiff. The fuel pump was also replaced because plaintiff complained that it was not working properly. At that time, the odometer read 12,601 miles.
On April 11, 1975, plaintiff had the fuel pump replaced by Faulk’s Auto Service in New Iberia, when the car had 15,078 miles on it. The new pump was furnished without charge by R. S. & S., Inc. On May 26, 1975, the car had to be towed in by Faulk, who replaced both of its six volt batteries. The car then had 17,115 miles on it.
On June 3, 1975, plaintiff took the car to R. S. & S., Inc. where the fuel pump was again replaced and a new ignition switch was installed. The mileage on the car was 17,593. Plaintiff paid for this service with a check for $108.44 but immediately stopped payment thereon. This suit was filed on June 12, 1975.
The record reflects that no further maintenance or repairs were performed on the vehicle until December 19,1975, when there were 26,127 miles on the car. At that time, Faulk’s Auto Service replaced the exhaust system, did a front end brake job, repaired the charging system and insulated the gas tank filler neck.
On January 5,1976, the car was towed in, another fuel pump was installed by Faulk’s with 26,685 miles on the odometer. On May 26, 1976, a new gas gauge, choke cable and thermostat were installed and the radiator repaired with 32,970 miles on the car. At the time of trial, on June 8,1976, the odometer showed 33,007 miles.
Plaintiff testified that in October, 1975, a Mr. Grisaffi did a general tune-up on the car, and changed the oil. There is no other evidence in the record of regular maintenance being performed after the 12,000 mile checkup.
The only other difficulty testified to by plaintiff was that he had difficulty in starting the car when it was about a month old, and that he had to hit the battery terminals with a wrench to get it to start. He stated that this condition was repaired by R. S. & S., Inc.
In ruling on the case, the trial judge said: “A careful analysis of the evidence demonstrates that except for the damage caused by the alternator pulley and the problem with the exhaust pipe, there were no repairs made to the automobile from the date of its purchase until February 7, 1975, when the car had traveled almost 12,000 miles. During the intervening period, Patout failed to have the car serviced for the 3,000 and 9,000 mile checkups required under the warranty. It appears that the car did suffer with more than the normal incidence of problems following the 12,000 mile checkup, but there is serious question of whether most of the problems developed from a lack of maintenance on the part of Pat-out or due to the improper repairs, as may have been the case with the fuel pump.
“The Dealer performed all of the repairs prior to June 3, 1975, free of charge under the warranty agreement. It appears that the only documented expense incurred by the plaintiff was for the installation of the fuel pump on April 11, 1975, (Exhibit P-1) and the installation of the two new batteries on May 26, 1975, (Exhibit P-2) by Faulk’s Auto Service.
“The Court concludes that the plaintiff has failed to prove that the car was subject to any major vices and defects which would warrant a finding of partial failure of consideration. While there is no doubt a number of problems with the car which could be characterized as “irritating”, the Court is convinced that in no small measure they were due to the failure of the plaintiff to properly service his car.”
Article 2520 of the Civil Code provides: “Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must *1164 be supposed that the buyer would not have purchased it, had he known of the vice.”
The record reflects that in the first 12,000 miles of operation, the only work necessary was the replacement of a pulley, repair of a dent in the hood, a repair to the exhaust pipe which had come loose at the manifold and cleaning the battery terminals. During that period of time, from June 21, 1974, until late February, 1975, or eight months, the vehicle was in the shop for repairs for only three days. The car was already out of warranty when the water pump went out on February 26,1975.
Under those circumstances, we agree with the trial judge that plaintiff has failed to prove the existence of redhibitory defects in the vehicle he purchased.
R. S. & S., Inc. has asked for interest on the award of $108.44 made to it in the judgment. The stipulation relative thereto did not provide for interest. Article 1921 of the Code of Civil Procedure provides for interest in judgments only if it is prayed for or provided for by law. R. S. & S., Inc. is therefore not entitled to interest.
The judgment appealed from is affirmed. Plaintiff is to pay all costs of this appeal.
AFFIRMED.