COVINGTON, Chief Judge.
This matter involving child support and alimony has been before this Court previously and has exhausted many judicial days in the courts below.[1]
The parties were divorced in 1979, with the wife getting custody of the three minor children and an award of child support in the amount of $2,025.00 per month and alimony in the amount of $675.00 per month. In this Court’s reported case, we found that the husband had “a net worth in excess of $1.2 million.” We also found that he owned unencumbered real estate which earned him about $60,000.00 per year, he had CD’s of about $180,000.00, which earned him interest income, and he owned other revenue-producing property which was encumbered. Under those circumstances this Court concluded that the husband was “financially able” to meet his child support and alimony obligations, and that he had not made “a good faith effort to comply with the court’s order to pay alimony and child support.”[2]
Nothing in the record before us persuades us to change our collective minds regarding the recalcitrance of the husband. He has pursued a labyrinthine path in his attempt to thwart any efforts of the wife to realize the court-ordered remuneration due as child support and alimony. Faced with on-going, and seemingly interminable, litigation and the persistent and frustrating refusal of the husband to comply with judgments of the courts, the wife requested the trustee of a trust fund established by Mr. and Mrs. Carter for the benefit of their children to provide certain funds for the support and educational needs of the children. Pursuant to its authority to expend trust funds for the children’s benefit, the trustee commenced making certain payments from the trust funds to Mrs. Carter for the support of the children and direct payments to the children’s school.
Although Mr. Carter apparently acquiesced in the trust fund arrangement, it did not prove to be a satisfactory substitute for the court-ordered award of child support, inasmuch as the trust funds were being depleted to the detriment of the children, the trust beneficiaries, by this arrangement. Consequently, Mrs. Carter brought the current rule before the courts for accumulated child support, alimony and medical expenses.[3]
After hearing, the trial judge found Mr. Carter to be in arrears on child support in the amount of $104,675.00 and on alimony in the amount of $38,750.00 (through April 1, 1987). Mr. Carter has appealed this judgment. We amend and affirm.
The husband on this appeal argues that the payments from the trust fund agreement constituted an extra-judicial agreement between the parties to substitute the payments from the trust fund for the husband’s obligation to pay child support and alimony directly to the wife.
The law governing extra-judicial agreements modifying court-ordered child support was established by the case of Dubroc v. Dubroc, 388 So.2d 377, 380 (La.1980):
[A]n agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional *566 obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child’s interests, would be inimical to the ultimate goal of support and upbringing of the child.
It is also well-established that for such an agreement to be effective, the parties must clearly agree to the modification. Hendrix v. Hendrix, 457 So.2d 815 (La.App. 1 Cir.1984).
Concerning the alleged extra-judicial agreement in the instant case, Mrs. Carter testified, as follows:
Q. Did you ever agree to give Mr. Carter credit against his child support or alimentary obligations, for the monies that the trust paid for the schools?
A. No, I didn’t.
On re-direct, she testified:
Q. Mrs. Carter, did you ever, at any time, agree to give Mr. Carter credit against his child, judgmental child support obligation, for any monies that the trust paid directly to Episcopal High School or the Episcopal school system?
A. No I did not. And I think that I need to say this. The money in the trust is the children’s money. Why would I let them spend their own money when he has an obligation, as a father, to pay them child support. Uh, you know, and I feel that this is harassment, because, he’s the father and he should pay the child support. The children shouldn’t take the money that they need for college, ...
Mr. Carter testified on this issue, as follows:
Q. Mr. Carter, you were aware, were you not, that the Fidelity Trust at Fidelity Bank was paying a check to Mrs. Carter, each month, since sometime back in nineteen eighty-two?
A. Yes.
Q. And, uh, do you recall having any conversations with the bank as to whether or not, as a settlor of the trust, you had any objections to that procedure?
A. I did object.
Q. Did they pay it anyway?
A. Yes.
Q. So, there was no agreement between you and the trust, that the trust would pay these monies belonging to the children’s trust to Mrs. Carter. Is that correct?
A. The agreement was made between Mrs. Carter and the trust office. I, at the time, I didn’t have the funds to make the payments that were required of me, and, uh, in as much as the trust was funded for the benefit of the children, I reconsidered and uh, did not employ an attorney to sue the bank, as I had once thought I might.
Q. But,
A. I felt that I, if given time, would be able to make the payments in accordance with the prescribed judgment.
The burden of proof is on the party relying on the agreement to relieve him of his obligation, or to modify his obligation, under the judgment to prove the existence of the agreement. Gomez v. Gomez, 421 So.2d 426 (La.App. 1 Cir.1982). We find that the husband has failed to prove an agreement to modify his obligation to pay child support as ordered by the Court. The expending of the trust funds for the support of these children and for their education was necessitated by Mr. Carter’s failure to meet his court-ordered obligation. The trust fund arrangement did not relieve him of his obligation to pay child support.
Moreover, the trial court has great discretion in determining factual matters, such as the existence of any agreement relative to child support and, in the absence of an abuse of its discretion, its decision will not be disturbed on appeal. Feazell v. Feazell, 445 So.2d 143 (La.App. 3 Cir.1984).
The trial judge, after evaluating the parties’ credibility, found that the trust fund arrangement was not an extra-judicial agreement, in the interest of the children, *567 which was intended to relieve Mr. Carter of his court-ordered obligations. We agree with this finding. We believe the totality of the evidence establishes that there was no extra-judicial agreement by the wife with the husband to waive her rights to child support and alimony. The record clearly reflects the circumstances under which the wife was forced to resort to the trust fund to continue to support and up-bring the children in the face of her husband’s adamant refusal to comply with the orders of court.
However, we believe that the monies received by Mrs. Carter from the trust should be reimbursed to the trust from the award made to her for child support. In view of our holding that the alleged extrajudicial agreement is ineffective, we order Mrs. Carter to reimburse the trust in the amount of $69,628.50 upon receipt of the monies awarded by the trial judge’s judgment as affirmed by this Court’s decision. It is within our power to render any judgment which is just, legal and proper upon the record on appeal. La.C.C.P. art. 2164. It is just, legal and proper for the trust to be repaid for these funds expended as aforesaid.
The other issues presented by appellant deal with potential claims against the wife for community or separate funds, which should be settled in the community property partition, rather than by a rule involving child support and alimony. See Hartley v. Hartley, 349 So.2d 1258 (La.1977).
The judgment appealed is amended and affirmed as amended, at appellant’s costs.
AMENDED AND AFFIRMED.

. See Carter v. Carter, 387 So.2d 660 (La.App. 1 Cir.1980), which briefly explains some of the trials and tribulations of these parties to that date. They have continued up to the present time, without any reasonably foreseeable expectation of a satisfactory resolution.

. Carter v. Carter, 387 So.2d at 661.

. At trial, the question involving medical expenses was severed, and not considered.